# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

JERRY ADAMS, III,            :

           Petitioner,            Case No. 1:12-cv-938

     - vs -                    Chief Judge Susan J. Dlott
                                Magistrate Judge Michael R. Merz

WARDEN, Lebanon Correctional
Institution,

           Respondent.            :

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits. Petitioner has filed a Petition (Doc. No. 1) and a Traverse (Doc. No. 17); Respondent has filed an Answer/Return of Writ (Doc. No. 12). The case is accordingly ripe for decision.

Adams pleads the following Grounds for Relief:

> **GROUND ONE:** Conviction for Aggravated Murder in violation of Due Process Clause of 14th Amendment, U.S. Constitution.
>
> **Supporting Facts:** State of Ohio used double inferences to prove the "prior calculation" element of Aggravated Murder charge, thereby relieving the State of its burden of proof; Federal Constitutional Structural Defect.
>
> **GROUND TWO:** Ineffective assistance of Trial Counsel in violation of Sixth & Fourteenth Amendments, U.S. Constitution.
>
> **Supporting Facts:** Trial counsel rendered ineffective assistance of counsel where he advised Petitioner of the incorrect date his petition for post-conviction relief was due to be filed thereby preventing consideration of any claim on post-conviction relief.

*Id.*

**Procedural and Factual History**

Adams was indicted by the Butler County Grand Jury in 2009 on one count of aggravated murder (R.C. 2903.01(A)) (Count 1) with two firearms specifications, one count of having weapons while under disability (R.C. 2923.13(A)(3)) (Count 2), and one count of tampering with evidence (R.C. 2921.12(A)(1)) (Count 3). (Exhibit 1, Return of Writ, Case No. CR2009-02-0287, PageID 61.)   Adams waived a jury, was tried by the court, and was found guilty as charged of Aggravated Murder and the attached firearms specifications, as well as guilty of having weapons under a disability.   The court dismissed Count Three (Tampering with Evidence) pursuant to Ohio R. Crim. P. 29.  Adams received a sentence of  twenty-five years to life for the aggravated murder.

Adams appealed to the Court of Appeals of Ohio, Twelfth Appellate District, Butler County, raising two assignments of error:

 1. There was insufficient evidence to justify a conviction for aggravated murder, and

2. The court erred in using tattoo evidence for an improper purpose.

(Traverse, Doc. No. 12, Exh. 20, PageID  159).

The Court of Appeals of Ohio set forth the facts of this case on direct appeal as follows:

> [*P2] In 2009, reputed drug dealer Raymond ("Ray Ray") Davis was shot in the chest at close range by the driver of a black Jeep Cherokee at the corner of Fifteenth Avenue and Vermont Street in Middletown, Butler County, Ohio. Davis died from his wounds shortly thereafter at a local hospital. The Middletown Police Department learned that the shooter was Jerry Adams and arrested him six days after the shooting.

> * * *

2

[*P11] In this case, the state presented overwhelming evidence, both direct and circumstantial, to prove beyond a reasonable doubt that Adams was the person who fatally shot Davis. Ohio State Highway Patrol Trooper Jeremy Wickman testified that on July 15, 2008, he engaged in a high-speed pursuit of a vehicle on Dixie Highway in Middletown. Davis was traveling as a passenger in that vehicle. The chase ended when the driver of the vehicle got out and fled while the vehicle was still moving. Davis, who had remained in the vehicle, turned off the vehicle's ignition and surrendered. Trooper Wickman placed Davis in the back of his cruiser and asked him who had been driving, and Davis told him that "AJ" had been driving. Trooper Wickman relayed this information to the Middletown Police Department, which immediately knew that "AJ" was William Wofford. Trooper Wickman testified that Wofford was subsequently charged with operating a motor vehicle under the influence, fleeing and eluding, driving under suspension, and other minor traffic charges. Later, a video recording of Davis' remarks to Trooper Wickman came into Adams' possession.

[*P12] Davis' father, Van Davis, testified that in September or October 2008, Adams came to his house. Also present at Van's house that day were Raymond Davis' girlfriend, Karmen Bankston, and his cousin, Marvin Davis. Adams showed them the video of the high-speed chase and Raymond's statements to Trooper Wickman, and remarked, "[A]in't that something, he [Raymond] the police." Adams offered copies of the video to Van and Marvin, encouraged them to show the videos to others, and told them that Raymond would have "to pay" for being a "snitch." The next day, Adams came to Marvin's house, bringing Wofford with him. Adams again told Marvin that Raymond would have to pay for cooperating with the police and that he was going to put copies of the video of Raymond's statements to Trooper Wickman on the internet and pass them out in the nearby city of Hamilton.

[*P13] Dana "Smurf" Johnson testified that on February 10, 2009, he went with Adams in Adams' black Jeep Cherokee to buy some marijuana. As Adams was driving, he spotted Raymond Davis talking to Bankston at the corner of Vermont and Fifteenth and said, "There go that snitch ass nigger, Ray-Ray, right there." Adams drove to his father's house and stayed there for about 15 to 20 minutes. After Adams returned to the vehicle, he and Johnson continued to circle the block. At some point, Adams pulled out a .40-caliber handgun from the vehicle's glove compartment and placed it on his lap.

[*P14] Adams again circled the block and parked near the corner of Fifteenth and Vermont where Davis was standing. Johnson pleaded with Adams not to shoot Davis but to fight him instead, because Davis' act of cooperating with the police on the earlier, unrelated crime involving Wofford "wasn't that serious for no gun." However, when Johnson asked Adams, "Why you got that gun out?" Adams replied, "Fuck that nigger, I'm about to check this nigger." Adams rolled down his window about 6 to 9 inches and waived Davis over to his car, hiding his handgun under a jacket on his lap. When Davis came over to Adams' vehicle, Adams asked him, "What the fuck you still doing out here knowing you're on DVD, snitching and all that?" According to Johnson's testimony, Davis began to stutter and trip over his words, trying to talk himself out of the situation. Adams pulled out his .40-caliber handgun, pointed it at Davis through the open window of his vehicle, and ordered him to back up. When Davis backed up about a foot, Adams shot Davis in the chest and "calmly" drove away.

*State v. Adams* 2011 Ohio 536; 2011 Ohio App. LEXIS 469 (12th Dist. February 7, 2011). Following the briefing on the appeal, the court of appeals affirmed Adams' conviction and sentence. *Id.* The Ohio Supreme Court declined jurisdiction over a subsequent appeal. *State v. Adams,* 128 Ohio St. 3d 1503 (2011).

# Analysis

**Ground One: Insufficiency of the Evidence**

In his First Ground for Relief, Adams claims he was denied due process of law as the trial court conviction of aggravated murder was based on insufficient evidence.[1]     Petitioner

---

[1] In the Petition, prepared with the assistance of an Inmate Law Clerk, Adams complained only of the insufficient evidence to support the prior design and calculation element. By the time he filed his Traverse, he was represented by retained counsel who broadened the claim to include the eyewitness identification testimony. Since both claims

raised this claim on direct appeal as his first assignment of error, arguing:

> There was insufficient evidence to justify a finding of aggravated prior calculation and design, as well as intent to commit murder, when a shooting is spur of the moment decision, the State's identification witnesses suffered from lack of credibility, and the court relied on its own interpretation of certain photographs in the absence of testimony explaining the meaning of these photographs.

(Appellant's Brief, Return of Writ, Doc. No. 12, Ex. 1, PageID 100.)

The Warden asserts that under the standard established by the Antiterrorism and Effective Death Penalty Act (AEDPA), codified principally at 28 U.S.C. § 2254(d), Petitioner is not entitled to federal habeas corpus relief unless the state court's adjudication of a claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. See 28 U.S.C. § 2254(d); see also *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001); *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).

> The AEDPA requires federal habeas courts to review state court decisions with "deference and latitude." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). "A state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The federal court's review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).
>
> The high court within recent years has clarified further that it is the state court decision that must be contrary to or an unreasonable application of United States Supreme Court law, not the analysis

---

were preserved on direct appeal, both are dealt with here.

utilized to reach the decision. See *Harrington*, 131 S.Ct. 770. There the court said:

> By its terms §2254(d) bars relitigation of any claim "adjudicated on the merits" in state court, subject only to the exceptions in §§2254(d)(1) and (d)(2). There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." *** And as this Court has observed, a state court need not cite or even be aware of our cases under §2254(d). *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam). ***

> ***

> Federal habeas relief may not be granted for claims subject to §2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, §2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); or that it "involved an unreasonable application of" such law, §2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, §2254(d)(2).

> ***

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). [In other words, fair-minded jurists would have to agree that the decision is unreasonable]. And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid*. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. ___, ___, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

> ***

If this standard is difficult to meet, that is because it was meant to be. *** *Harrington*,

131 S.Ct. at 785-786.

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d

> 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam*).

The Twelfth District Court of Appeals summarized the evidence as quoted above. In evaluating the evidence, it applied the *Jackson v. Virginia*, 443 U.S. 307 (1979) standard as adopted by the Ohio Supreme Court in *State v. Jenks*, 61 Ohio St. 3d 259 (1991).

The arguments presented by Adams in his Traverse speak to the credibility of the witnesses, but do not cite any facts which make any of the eyewitness testimony inherently incredible. The credibility of witnesses is for the trier of fact. The court of appeals found the evidence overwhelming and rejected Adams' sufficiency claim. The Magistrate Judge concludes that was neither an unreasonable determination of the facts nor an unreasonable application of *Jackson, supra*. Adams' First Ground for Relief is without merit and should be dismissed with prejudice.

**Ground Two:  Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Adams contends he received ineffective assistance of trial counsel because trial counsel gave him incorrect information as to the deadline for filing a post-conviction petition.

The Warden asserts Ground Two is procedurally defaulted because it was never presented to the Ohio courts. The only ineffective assistance claim Adams presented was in his

8

post-conviction petition itself. There, Adams claimed that his trial counsel had been ineffective for failing to raise an alibi defense. Therefore, the claim he presented to the state court is different from that raised in the instant habeas petition. Adams makes no response to this defense in his Traverse and it is well-taken.

A federal habeas petitioner cannot obtain a ruling on the merits of a constitutional claim which he has completely failed to present to the state courts. Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright*. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert denied,* 474 U.S. 831 (1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted). "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), *citing Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006), *quoting O'Sullivan v. Boerckel,* 526 U.S. 838, 846-47 (1999). A review of Adams' Ohio Revised Code § 2953.21 Petition shows that he made no claim that his Petition was late because his attorney had misinformed him of the filing deadline. (Petition, Doc. No. 12-2, PageID 276-85.)

The Second Ground for Relief should be dismissed with prejudice.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

March 27, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).