IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

JERRY ADAMS, III,                              :

            Petitioner,            Case No. 1:12-cv-938

  - vs -                                            Chief Judge Susan J. Dlott
                                                 Magistrate Judge Michael R. Merz
WARDEN, Lebanon Correctional
Institution,

            Respondent.           :

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 21) to the Magistrate Judge's Report and Recommendations recommending dismissal with prejudice (Doc. No. 19, the "Report"). Chief Judge Dlott has recommitted the case for reconsideration in light of the Objections (Order, Doc. No. 22).

Petitioner pleads two grounds for relief, insufficient evidence to prove the prior calculation and design element of aggravated murder (Ground One) and ineffective assistance of trial counsel for failure to advise him of the date his petition for post-conviction relief was required to be filed (Ground Two). The Report recommended dismissing Ground One on the merits and Ground Two as procedurally defaulted. The Objections do not dispute that Ground Two is procedurally defaulted, but discuss solely Ground One.

The claim of insufficient evidence was presented to the Twelfth District Court of Appeals on direct appeal. The Objections argue that that court's resolution of the claim is both an objectively unreasonable application of clearly established Supreme Court precedent and is

1

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, thus entitling Adams to relief under both 28 U.S.C. § 2254(d)(1) and (d)(2).

As a standard for objectively unreasonable application of clearly established law, Adams relies on *Panetti v. Quarterman*, 551 U.S. 930 (2007).  The Supreme Court has very recently elaborated on the § 2254(d)(1) standard:

> [The § 2254(d)(1) standard is difficult to meet.] *Metrish v. Lancaster*, 569 U. S. ___, ___, 133 S. Ct. 1781, 185 L. Ed. 2d 988, 996 (2013). "'[C]learly established Federal law'" for purposes of §2254(d)(1) includes only "'the holdings, as opposed to the dicta, of this Court's decisions.'" *Howes v. Fields*, 565 U. S. ___, ___, 132 S. Ct. 1181, 182 L. Ed. 2d 17, 25 (2012) (quoting *Williams v. Taylor*, 529 U. S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). And an "unreasonable application of" those holdings must be "'objectively unreasonable,'" not merely wrong; even "clear error" will not suffice. *Lockyer v. Andrade,* 538 U. S. 63, 75-76, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U. S. ___, ___, 131 S. Ct. 770, 178 L. Ed. 2d 624, 641 (2011).

*White v. Woodall*, 572 U.S. ___, 2014 U.S. LEXIS 2935, **8-9 (Apr. 23, 2014).

The Twelfth District's summary of the evidence is set forth at length in the Report (Doc. No. 19, PageID 1063-65).  Briefly, there was testimony to the effect that the murder victim, Ray Ray Davis, was a passenger in a car driven by William "AJ" Wofford.  While being pursued by the Ohio State Highway Patrol, Wofford jumped from the car, but Davis identified Wofford to the troopers and Wofford was arrested and convicted of OMVI, fleeing and eluding, and other minor traffic offenses.  *State v. Adams* 2011-Ohio-536, ¶ 11; 2011 Ohio App. LEXIS 469 (12th Dist. February 7, 2011). Three months later, Adams appeared at the home of Ray Ray's father and showed him and others present a video of the high speed chase and Ray Ray's statements to

the highway patrol. *Id.* at ¶ 12. He then said Ray Ray was going to have to "pay" for being a "snitch." *Id.*

Four months later, Adams was driving with Dana "Smurf" Johnson when they both spotted Ray Ray on the street; Ray Ray said to Johnson "[t]here go that snitch ass nigger." *Id.* at ¶ 13. After visiting his own father's home, Adams continued to drive with Johnson, putting a .40 caliber pistol from the glove box into his lap. *Id.* He then confronted Davis about his being a snitch, shot him in the chest, and then drove away, all according to Johnson. *Id.* at ¶ 14.

There were two eyewitnesses, Johnson and Julia Robinson.[1] The Report concluded arguments about their credibility were for the jury, not this habeas court (Report, Doc. No. 19, PageID 1069). Adams says the appellate court's accepting this testimony resulted in an unreasonable determination of the facts because:

> Mr. Adams cited several facts in his Traverse which demonstrated the incredibleness and inherently unreliable nature of the eyewitnesses: both eyewitnesses Dana "Smurf" Johnson and Julia Adams gave convenient accounts that did not comport with objective facts, e.g., the pathologist[']s report and the nature of tinted windows.

(Objections, Doc. No. 21, PageID 1077.) Adams gives no citations to the record in the Objections nor to the place in the Traverse where the record citations supposedly were made. In the Traverse itself, no record references are given (Doc. No. 17, PageID 1058). The Court is not obliged to search the record for evidence which Adams says is there and which he says proves the eyewitnesses were incredible, but which counsel has not taken the time to cite. See *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990).

---

[1] In an ironic typographical error, Adams' counsel refers to this witness as "Julia Adams." (Objections, Doc. No. 21, PageID 1077.)

Adams argues the evidence in this case does not satisfy the test for prior calculation and design set forth in *State v. Braden*, 98 Ohio St. 3d 354 (2003).  But in *Braden* the Ohio Supreme Court held:

> There is no bright-line test to determine whether prior calculation and design are present. Rather, each case must be decided on a case-by-case basis. *State v. Taylor* (1997), 78 Ohio St.3d 15, 18-20, 1997 Ohio 243, 676 N.E.2d 82. This court has held, "Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified." *State v. Cotton* (1978), 56 Ohio St.2d 8, 10 O.O.3d 4, 381 N.E.2d 190, paragraph three of the syllabus. "[t]here is no bright-line test to determine whether prior calculation and design are present.

98 Ohio St. 3d at 365.  In this case, Adams announced to the victim's father in October 2008 that his son, Ray Ray, would have to "pay" for being a "snitch."  In February 2009 Adams spotted Davis on the street and shot him more than twenty minutes later.  Adams claims there was no evidence showing the relationship between Adams and Davis was strained, but Adams' threats to Davis' father belie that (Objections, Doc. No. 21, PageID 1077-78).   While Adams may not have carefully chosen the murder site, he had more than adequate time to reflect on the crime after he and Johnson spotted Davis on the street.  The fact that Adams regularly carried a .40 caliber handgun in his glove box shows he did not have to spend time thinking about what weapon to use, not that the gun was chosen on the spur of the moment.  Nor was this "an almost instantaneous eruption of events."  *Braden, supra*, at 364.  Whether one counts the time from October 2008 or the twenty minutes plus from the spotting of Davis on the street, there is nothing instantaneous about the act.

4

**Conclusion**

Based on the foregoing analysis, it is again respectfully recommended that the Petition be dismissed with prejudice and that Adams be denied a certificate of appealability and leave to appeal *in forma pauperis*.

May 13, 2014.

                   s/ *Michael R. Merz*
                   United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).